# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 24, 2010

## STATE OF TENNESSEE v. TAVARES DUONE BRADEN

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-B-1637     Steve Dozier, Judge**

---

**No. M2009-02240-CCA-R3-CD - Filed September 8, 2011**

---

A Davidson County jury convicted the Defendant, Tavares Duone Braden, for the sale of less than 0.5 grams of cocaine, possession with intent to sell 0.5 grams or more of cocaine, promotion of prostitution, possession of marijuana, and evading arrest. The trial court sentenced the Defendant to an effective sentence of eighteen years in the Tennessee Department of Corrections. On appeal, the Defendant contends: (1) the evidence is insufficient to sustain his convictions; (2) the trial court erred when it denied his motion for judgment of acquittal; (3) the trial court imposed an excessive sentence; and (4) he received the ineffective assistance of counsel. After a thorough review of the record and applicable authorities, we conclude the evidence is sufficient to sustain the Defendant's convictions and that the trial court properly sentenced him. We, therefore, affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

William E. Griffith (on appeal) and Reginald Horton (at trial), Nashville, Tennessee, for the Appellant, Tavares Duone Braden.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Amy Eisenbeck and Rachel Sobrero, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's alleged selling narcotics and promotion of

prostitution to an undercover officer. For these offenses, a Davidson County grand jury indicted the Defendant for the sale of less than 0.5 grams of cocaine, possession with the intent to sell 0.5 grams or more of cocaine, promotion of prostitution, possession of marijuana, and evading arrest.

## A. Facts Presented at Trial

At the Defendant's trial on these charges, the following evidence was presented: Corey Sanderson, an officer with the Metro Nashville Police Department, testified that on March 25, 2006, he was working undercover in an attempt to purchase narcotics. Officer Sanderson was located in a car that was wired in order to transmit the conversation he had with the drug seller to other officers, who would be stationed nearby. Officer Sanderson explained that he planned to approach a dealer and ask to purchase drugs, which he would purchase with previously photocopied money. When Officer Sanderson said, "[T]hat's a good deal," this declaration would signal other officers that the exchange was complete. The other officers would then arrest the dealer. The officers were provided photocopies of the money that Officer Sanderson planned to use to purchase the drugs so that the officers could compare the money found on any suspect with the photocopies.

After establishing this plan, the officers traveled to a TA Truckstop, which was located beside a hotel, in an area about which they had received complaints of drug activity. As Officer Sanderson drove into the hotel parking lot, he saw the Defendant sitting in the passenger's seat of a vehicle beside his co-defendant, Ms. Phillips, who was seated in the driver's seat. The officer and the Defendant waved to each other, which Officer Sanderson testified was a common signal that someone was looking for a prostitute or to purchase drugs.

At this point, Officer Sanderson stopped the vehicle he was driving, and the Defendant exited the vehicle in which he was sitting, approached the officer, and asked if the officer was looking to purchase drugs or a prostitute. The officer said, "a girl," and the Defendant told him that the woman who was sitting in the car with him was "for sale." Officer Sanderson asked if he could "get oral sex for twenty dollars," and the Defendant agreed. During this exchange, Ms. Phillips exited the vehicle in which she was sitting and nodded toward the officer, seemingly in agreement.

The Defendant then asked the officer if he needed some "dope," and the officer responded, "[S]ure, I do. I would like some hard." Officer Sanderson explained that "hard" is a common term for crack cocaine. The Defendant told him that he could not get any crack cocaine, but could get some powder. He told the officer to park and wait for two minutes while he retrieved the drugs. The Defendant returned and entered the officer's vehicle in an

attempt to avoid police detection, telling the officer that police often frequented the area. The Defendant told the officer that he could purchase the cocaine for $65, and the two then settled on a final price of $60. The Defendant told the officer that the cocaine was "good stuff" because it came "right off the block," meaning directly from the kilo of cocaine. The officer gave the Defendant three of the previously photocopied twenty-dollar bills, and the Defendant gave him a small clear plastic baggie containing a white powdery substance. The officer said "that's a good deal" to signal the other officers that the transaction was complete.

At that point, the other unmarked police vehicles approached Officer Sanderson's car in which the Defendant was still sitting. When the Defendant saw this, he jumped out of Officer Sanderson's car and began running. Officer Sanderson described the Defendant as "frantic" saying he ran into cars, fell, and kept running away in order to avoid being detained by the police. Eventually, officers apprehended the Defendant and, when searching him, found the previously photocopied twenty-dollar bills, along with an additional $81, some marijuana, and more cocaine.

After the Defendant's arrest, Officer Sanderson asked the Defendant questions in order to complete his arrest report. In response to one of those questions, the Defendant reported that he did not have a place of employment.

On cross-examination, Officer Sanderson testified that, immediately after the other police officers arrived and the Defendant started running, the officers exited their vehicle and identified themselves as police officers. They were wearing "raid gear" and were yelling, "Police!" The officer agreed that, after the Defendant was "taken down" by officers in a concrete breezeway of the hotel, the Defendant was bleeding. The Defendant's injuries required some stitches.

Detective Daniel Schager, with the Metro Nashville Police Department, testified that he was Officer Sanderson's supervisor, and he confirmed Officer Sanderson's recount of the undercover drug buy that led to the Defendant's arrest. Detective Schager participated in this operation as back up and support, and he was also responsible for taking down any suspect apprehended during the operation. Another detective, Mike Galluzi, who was also participating in this operation, informed Detective Schager that Officer Sanderson had given the signal over the radio that indicated that the drug purchase had been completed. Detective Schager confirmed that, shortly after this, police officers surrounded Officer Sanderson's car, and the Defendant exited Officer Sanderson's car and attempted to flee. In his haste, the Defendant ran into one of the police vehicles, "bounced off it," and ran into a breezeway where Detective Galluzi "tackled him." Detective Schager, who said he was wearing a clearly marked vest upon which "POLICE" was written on the front and back, said that officers were yelling "stop" and "police," but that the Defendant refused to stop. Detective

Schager confirmed that the Defendant hit his head at some point when the officers were attempting to apprehend him.

On cross-examination, Detective Schager testified that, at one point, Officer Sanderson left the parking lot with the Defendant and circled the block.

Mary Wilhoite, who works in the property room at the Metro Nashville Police Department, described how Officer Sanderson brought the drugs confiscated in this case to her. She then described the procedures her department used to ensure the safety of those drugs. Officer Wilhoite testified she and her supervisor took the drugs to the Tennessee Bureau of Investigation ("TBI") to be weighed and processed.

Glen Glenn, a TBI agent, testified that he examined the drugs seized in this case. He determined that the substances submitted by police officers included 0.9 grams of marijuana, 1.0 gram of cocaine in one baggie, and 0.5 grams of cocaine in the other baggie.

Based upon this evidence, the jury convicted the Defendant of the sale of less than 0.5 grams of cocaine, possession with intent to sell 0.5 grams or more of cocaine, promotion of prostitution, possession of marijuana, and evading arrest.

## B. Facts Presented at Sentencing

At a hearing to determine the Defendant's sentence, the following evidence was presented: Yannick Deslauriers, a detective with the Metro Nashville Police Department, testified that on January 28, 2008, while the Defendant was out on bond on this case, the detective purchased drugs from the Defendant. Detective Deslauriers testified about the circumstances of the drug deal saying that he was working undercover with a confidential informant, and the two men traveled to a gas station in an attempt to purchase drugs. Upon entering the gas station parking lot, the detective made eye contact with the Defendant who was seated in a black car and held up four fingers, indicating he wanted to buy $40 of crack cocaine. The Defendant nodded his head and motioned for the detective to come toward him. The confidential informant, who had previously been outfitted with a wire, exited the detective's vehicle and approached the Defendant's car.. Detective Deslauriers said the window of the detective's car was lowered, so he could hear the conversation.

Detective Deslauriers said the Defendant asked the informant, "What do you need, a forty?" to which the informant responded affirmatively. The Defendant said, "Follow me across the street. They don't like it when we do it here." The confidential informant reentered the detective's vehicle and the detective followed the Defendant to the entry of the Hallmark Inn. There, the Defendant entered the detective's vehicle and gave him a yellowish

rock substance in exchange for forty dollars. The detective arrested the Defendant and then searched his car, where he found thirteen more grams of the same substance. The substance was later field tested, and officers determined it was not crack cocaine. The Defendant explained that he had mistakenly purchased fake crack cocaine, and he was trying to recoup some of his money by reselling the fake crack cocaine to the officers. The Defendant was charged with selling a counterfeit controlled substances. These charges were still pending at the time of the sentencing hearing.

The Defendant's mother, Doris Braden, testified that the Defendant's father was not a part of his life when the Defendant was growing up, which caused the Defendant to suffer from depression. The Defendant was medicated for a period of time, but at some point he stopped taking his medication. Braden said she and her mother raised the Defendant, whom she described as a good student who did not get into trouble. Braden said she knew only a little of the Defendant's criminal history but that, recently, he sounded ready to "correct his life" and "straighten . . . up."

Braden testified that if the Defendant were granted an alternative sentence he could come back and live with her. She said she and the Defendant's stepfather, who was employed with the State, would assist him financially. They would closely monitor his activities and drive him to Nashville as part of a Community Corrections program if necessary.

The Defendant testified that he started using drugs at fifteen and, eventually, turned to crime, including theft and forgery, to support his drug habit. The Defendant acknowledged that he was a drug addict. The Defendant explained that his drug addiction caused him to attempt to sell fake drugs to an undercover officer on January 28, 2008. The Defendant requested counseling to address his drug addiction and to be sentenced to Community Corrections. The Defendant discussed his previous employment and said that he had received his GED while he was incarcerated.

On cross-examination, the Defendant agreed that he sold counterfeit drugs while he was out on bond in this case. He agreed he had been convicted of seventeen felonies as an adult. He further agreed he had been sentenced in many of those cases to probation, which he violated. He was released on parole in 2004 but his parole was revoked seven months later. He was again offered parole November 28, 2005, and his parole was revoked based upon thecharges that are the subject of this case.

The Defendant could not explain why two of the companies he listed as employers had no record of his employment. He also could not explain why the State of Tennessee had no record of issuing him a GED. The Defendant agreed that he falsely told the officer preparing

his presentence report that his driver's license had been reinstated. He said that he was, in fact, in the process of getting his license reinstated.

Upon questioning by the trial court, the Defendant refuted Detective Deslauriers's recount of the January 28, 2008, incident. He said that the detective never held up four fingers and the Defendant never waved him over. Instead, he said he was at a gas pump when the detective pulled up and the confidential informant asked him for drugs. He decided, he said, to grab some "bread crumbs" he had in a napkin in his car. He said the officer could not have found thirteen or more grams of a similar substance in his car. Upon further questioning, he stated that he had, in fact, made the substance by cooking bread crumbs in the microwave to make them look like crack cocaine.

The State recalled Detective Deslauriers, and the detective testified that the substance he purchased was not bread crumbs and that it was sold to him in a plastic baggie and not a napkin. The detective said the Defendant told him that he had just purchased the fake crack cocaine for $300 at the same gas station where the detective first encountered the Defendant. Detective Deslauriers also testified he found and seized over $100 from the Defendant at the time of the arrest.

Based upon this evidence, the trial court sentenced the Defendant to ten years[1] for his Class C felony conviction of the sale of less than 0.5 grams of cocaine; eighteen years for his Class B felony conviction of possession with the intent to sell more than 0.5 but less than 26 grams of cocaine; three years for his Class E felony conviction of promoting prostitution; and to eleven months and twenty-nine days for his misdemeanor convictions of possession of marijuana and evading arrest. The trial court ordered the sentences to run concurrently, for a total effective sentence of eighteen years.

## II. Analysis

On appeal, the Defendant contends: (1) the evidence is insufficient to sustain his convictions; (2) the trial court erred when it denied his motion for judgment of acquittal; (3) the trial court erred when sentencing him by imposing an excessive sentence; and (4) he received the ineffective assistance of counsel.

---

[1]The trial court originally sentenced the Defendant to nine years as a Range III Persistent Offender for this conviction. It later entered an amended judgment sentencing the Defendant to ten years for this conviction. In the attached order, the trial court noted that ten years was the minimum sentence in the Defendant's applicable sentencing range for this conviction.

## A. Jurisdiction

On appeal, the Defendant raises several issues. The State counters that the Defendant has waived one of these issues by failing to file a timely motion for new trial. The record reflects that the trial court entered the judgments in this case on May 13, 2008. It filed an amended judgment for Count III on August 4, 2008. The Defendant did not file a motion for new trial. On February 17, 2009, the Defendant filed a pro se petition for post-conviction relief. The trial court appointed counsel, who filed a "MOTION FOR EXTENSION OF TIME," asking the trial court to grant him additional time to file an amendd motion for new trial based upon four reasons, including that the attorney had not represented the Defendant at trial and that the transcripts had not yet been completed. On that same date, the appointed counsel also filed a motion for new trial. On July 2, 2009, the appointed counsel filed a motion for new trial that included the Defendant's claims of ineffective assistance of counsel. The trial court held a hearing on the amended motion for new trial, during which evidence about the ineffectiveness of counsel was presented, and then denied the Defendant's motion. This appeal ensued.

The Tennessee Rules of Appellate Procedure require us to determine whether we have jurisdiction in every case on appeal. *See* Tenn. R. App. P. 13(b). In criminal cases, an appeal as of right lies from a final judgment of conviction. Tenn. R. App. P. 3(b). Filing a notice of appeal within thirty days of the final judgment date initiates the appeal; however, this Court has authority to waive "in the interest of justice" the untimely filing of a defendant's notice of appeal. Tenn. R. App. P. 4(a). If a timely motion for new trial under Tennessee Rule of Criminal Procedure 33(b) is filed, however, "the time for appeal . . . shall run from entry of the order denying a new trial . . . ." Tenn. R. App. P. 4(c).

Tennessee Rule of Criminal Procedure 33(b) provides that a party requesting a new trial must file his request within thirty days of the entry of the order of his sentence. Tennessee Rule of Appellate Procedure 3(e) provides that, in all cases tried by a jury, a defendant waives any issue relating to an "action committed or occurring during the trial . . . or other ground upon which a new trial is sought" unless the defendant raises such issue in a motion for a new trial. *See State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). Unlike the untimely filing of a notice of appeal, this Court does not have authority to waive the untimely filing of a motion for new trial. *State v. Stephens*, 264 S.W.3d 719, 728 (Tenn. Crim. App. 2007); *see* Tenn. R. App. P. 4(a). Also, because this provision is mandatory, the time for filing may not be extended. *See* Tenn. R. Crim. P. 45(b); *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997). Further, the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal; therefore, a late-filed motion for new trial will generally result in an untimely notice of appeal. *State v. Patterson*, 966 S.W.2d 435, 440 (Tenn. Crim. App.1997).

We agree with the State that the Defendant's motion for a new trial was untimely. The Defendant's motion for new trial was filed on April 23, 2009, almost one year after the Defendant was originally sentenced, May 13, 2008, and eight months after the trial court modified the Defendant's sentence on August 4, 2008. As such, the Defendant's motion for new trial was filed late. *See* Tenn. R. Crim. P. 33(b). The trial court considered and ruled on the Defendant's motion for new trial even though it was untimely. The trial court's jurisdiction to grant the Defendant a new trial, however, expired thirty days after it entered the sentencing order. *See Martin*, 940 S.W.2d at 569; *Stephens*, 264 S.W.3d at 728. As such, the trial court had no jurisdiction to hear the Defendant's motion for a new trial, and the order issued denying a new trial was a nullity and "does not validate the motion." *Martin*, 940 S.W.2d at 569.

When the motion for a new trial is not timely filed, the appellate court will consider only those issues that would result in the dismissal of the case, including sufficiency of the evidence, or a sentencing issue. Tenn. R. App. P. 3(e); *see also State v. Boxley*, 76 S.W.3d 381 (Tenn. Crim. App. 2001); *State v. Timothy Wayne Henderson*, No. 01C01-9801-CC-00001, 1998 WL 731576, at *1 (Tenn. Crim. App., at Nashville, Oct. 21, 1998), *no Tenn. R. App. P. 11 application filed*. We conclude the Defendant, by failing to file a timely motion for new trial, waived review of his objections in this appeal to the effectiveness of his trial counsel. *See Stephens*, 264 S.W.3d at 728; Tenn. R. App. P. 3(e). Because the remaining issues raised by the Defendant on appeal involve the sufficiency of the evidence and sentencing, we elect, in the interest of justice, to waive the untimely filing of the notice of appeal and review the issues upon the merits.

In coming to this conclusion, we recognize that the trial court's order that is the basis of this appeal treats the Defendant's motion as a petition for post-conviction relief. While the case was originally filed as a pro se petition for post-conviction relief, the Defendant's appointed counsel filed a motion for an extension of time to file a motion for new trial, which the trial court granted. The trial court then allowed the Defendant's attorney to file an amended motion for new trial. This Court has previously held:

In those situations where an appellant seeks post-conviction relief both in the form of a new trial and a delayed appeal, we believe the better procedure is for the trial court to grant the delayed appeal, when warranted, and dismiss the collateral attack upon the conviction without prejudice. We are cognizant of the statutory provision which contemplates the filing of only one petition for post-conviction relief from a single judgment. Tenn. Code Ann. § 40-30-202(c). This statute provides that if a petition has been resolved on its merits, a subsequent petition must be summarily dismissed. Tenn Code Ann. §§ 40-30-202(c); 40-30-206(b). Conversely, we interpret this to mean that those

petitions not resolved "on their merits" are not subject to dismissal. *Id.* This procedure would allow the appellant to pursue his post-conviction relief after review from the supreme court. The order of the supreme court denying an application for permission to appeal pursuant to Rule 11 shall be deemed a final judgment and the petition for post-conviction relief must be filed within one year of the date of this order; otherwise, the petition is barred. Tenn. Code Ann. § 40-30-202.

*Givson v. State*, 7 S.W.3d 47, 50 (Tenn. Crim. App. 1998). Because the posture of this case was contemplated as a motion for new trial, thereby making the trial court's order a nullity, we will review this case as an appeal from a late filed motion for new trial and not as a timely filed petition for post-conviction relief. The Petitioner will, therefore, be allowed to timely file a petition for post-conviction relief from a final judgment in this case.

## B. Sufficiency of Evidence

The Defendant contends that the evidence is insufficient to sustain his convictions. The Defendant challenges the sufficiency of the evidence with regard to three of his convictions, contending that there was "no evidence" presented before the trial court to prove that he possessed cocaine for the purpose of sale or delivery, that he promoted prostitution, or that he evaded arrest. The State counters that there was evidence presented to support each offense.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App.1999). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 199 Tenn. 298, 286 S.W.2d 856, 859 (Tenn.1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*,

571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 219 Tenn. 4, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn.2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

### 1. Possession of .5 grams or More of Cocaine with Intent to Sell or Deliver

The Defendant contends that there was no evidence presented that he possessed .5 grams or more of cocaine with the intent to sell or deliver the cocaine. He asserts that, while he did possess the cocaine in this case, it was not for resale. He notes that the cocaine and marijuana were in the same bag, which is consistent with how drugs are stored for personal use, and that there were no scales found in his possession.

The Defendant was found guilty of violating Tennessee Code Annotated section 39-17-417(a)(4), which makes it a crime to knowingly "possess a controlled substance with intent to manufacture, deliver or sell the controlled substance." A violation of Tennessee Code Annotated section 39-17-417(a)(4) is a class B felony if the amount of the cocaine possessed is .5 grams or more. T.C.A. § 39-17-417(c)(1). Thus, in order to convict the Defendant, the State was required to show: (1) a knowing mental state; (2) possession of cocaine; (3) an intent to sell or deliver that cocaine; and (4) that the weight of the cocaine was .5 grams or more. *See* T.C.A. § 39-17-417(a).

"[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C .A. § 39-11-302(b). A conviction for possession of cocaine may

be based upon either actual or constructive possession. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *State v. Brown*, 823 S.W.2d 576, 579 (Tenn. Crim. App.1991); *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Further, the trier of fact may infer from the amount of the drugs, along with relevant facts surrounding the arrest, that the drugs were possessed for the purpose of selling them. T.C.A. § 39-17-419; *see also State v. Willie Earl Kyles, Jr.*, No. W2001-01931-CCA-R3-CD, 2002 WL 927604, at *2 (Tenn. Crim. App., at Jackson, May 3, 2002) (concluding that jury could infer possession of drugs with intent to sell or deliver from amount of drugs and circumstances surrounding arrest of defendant)*, perm. app. denied* (Tenn. Oct. 21, 2002); *State v. James R. Huntington*, No. 02C01-9407-CR-00149, 1995 WL 134589, at *3-4 (Tenn. Crim. App., at Jackson, Mar. 29, 1995) (determining that jury could infer intent to sell marijuana primarily from large quantity of marijuana in defendant's possession), *perm. app. denied* (Tenn. July 10, 1995).

In the case under submission, the evidence presented at trial proved that Officer Sanderson and his fellow officers, as part of a sting operation, prepared to conduct the purchase of a prostitute's services and drugs in an area in which they had received complaints of such activity. When Officer Sanderson entered the parking lot of the hotel, the Defendant waved to the officer, a signal commonly used to indicate possession of drugs and a willingness to sell those drugs. After some discussion about a prostitute, which will be more fully discussed below, the Defendant asked the officer if he wanted to buy drugs. The Defendant then sold the officer cocaine. After the sale, and subsequent to a search incident to his arrest, officers found .5 grams or more of cocaine on the Defendant's person.

The evidence proved that the Defendant knowingly possessed this cocaine and that the cocaine weighed more than .5 grams. The crux of the Defendant's argument on appeal, is that he possessed the cocaine for personal use and not for resale. As stated above, a jury may infer that the Defendant possessed the cocaine for resale from the circumstances surrounding the arrest. *See Kyles*, 2002 WL 927604, at *2. They did so in this case, and we will not disturb the jury's finding on appeal. The evidence is sufficient to support the Defendant's conviction, and he is not entitled to relief on this issue.

## 2. Promoting of Prostitution

The Defendant next contends that the evidence is insufficient to support his conviction for promoting prostitution. He asserts that the evidence proved that he and the officer had a conversation about a girl, but that no money exchanged hands and the officer never found out if the girl was willing to participate in sexual activities for money. The State counters that the relevant statute does not require those elements argued by the Defendant and that the evidence presented was sufficient to sustain the conviction.

Tennessee Code Annotated section 39-13-515 states, "A person commits an offense under this section who promotes prostitution. Promoting prostitution is a Class E felony." Tennessee Code Annotated section 39-13-512(4) states, "Promoting prostitution" means, among other things, "[p]rocuring a prostitute for a patron" or "[s]oliciting, receiving, or agreeing to receive any benefit for [procuring a prostitute for a patron]." T.C.A. 39-13-512(4)(E)-(F). "Prostitution" includes "engaging in, or offering to engage in, sexual activity as a business[.]" T.C.A. § 39-13-512(5).

In the case under submission, the evidence proved that the Defendant waved to an undercover officer, a common signal that he was willing to participate in illicit activity. Officer Sanderson stopped the vehicle he was driving, and the Defendant exited from the vehicle in which he was sitting with a woman, approached the officer, and asked if the officer was looking to purchase drugs or a prostitute. The officer said, "a girl," and the Defendant told him that the one who was sitting in the car with him was "for sale." Officer Sanderson asked if he could "get oral sex for twenty dollars," and the Defendant said she would provide him that service for that fee. During this time, Ms. Phillips exited the vehicle in which she was sitting and nodded toward the officer, seemingly in agreement. By its statutory definition, promoting prostitution does not require sexual activity to take place. Further, the statutory definition of promoting prostitution does not require that money exchange hands. The evidence presented at the Defendant's trial proved that he agreed to procure a prostitute for the officer. This is sufficient to sustain his conviction, and he is not entitled to relief on this issue.

### 3. Evading Arrest

The Defendant next contends that the evidence is insufficient to sustain his conviction for evading arrest. He asserts that there is no proof that he knew that the officers were attempting to arrest him, in part because they were in plain clothes wearing vests.

To sustain a conviction for misdemeanor evading arrest, the State must prove that the Defendant intentionally fled "by any means of locomotion from anyone the [Defendant knew] to be a law enforcement officer if the [Defendant knew] the officer [was] attempting to arrest [him] or [he was] arrested [at the time of flight]." T.C.A. § 39-16-603(a)(1).

The evidence presented at trial, viewed in the light most favorable to the State, proved that when the Defendant entered the undercover officer's car he explained he was doing so because police were frequenting the area. After the drug transaction was complete, several unmarked cars surrounded the undercover officer's vehicle. The Defendant got out of the officer's car and began to run. The officers all testified that the police were shouting "POLICE" and wearing vests that bore the words "POLICE" on the front and the back. The

Defendant ran into one of the unmarked cars, fell down, and then got up and ran again. All the while, officers were shouting "STOP" and "POLICE." Accordingly, we conclude the evidence is sufficient to sustain the Defendant's conviction for evading arrest, and he is not entitled to relief on this issue.

### C. Judgment of Acquittal

The Defendant next asserts the trial court erred when it denied his motion for judgment of acquittal because the officers' testimony was inconsistent. The State counters that the trial court properly denied the motion for judgment of acquittal because any inconsistencies in the officers' testimony was a matter to be determined by the jury.

Rule 29 of the Tennessee Rules of Criminal Procedure provides, in relevant part, as follows:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Tenn. R. Crim. P. 29(a). This rule empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the State rests or at the conclusion of all the evidence. *See generally Overturf v. State*, 571 S.W.2d 837 (Tenn. 1978).

On appellate review of a denial of a motion for judgment of acquittal, we apply the same standard as a question of the sufficiency of the evidence. *See, e.g., State v. Brewer*, 945 S.W.2d 803, 805 n.2 (Tenn. Crim. App. 1997). Our standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This means we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

During the trial proceedings and on appeal, the Defendant contends only that the officers' testimony was inconsistent. He does not make mention of any specific testimony that is inconsistent. After a thorough review of the trial testimony, we note that Officer Sanderson said that the drug buy took place in the parking lot and that he did not leave the parking lot during the drug sale. Detective Schager testified that Officer Sanderson's vehicle

left the parking lot and circled the block during the drug sale. First, this inconsistency seems rather trivial in light of both officers' testimony that the Defendant sold Officer Sanderson drugs, that he fled from police when they attempted to arrest him, and that he possessed marijuana and cocaine when he was arrested. Further, as the trial court noted, it is the jury's job to resolve any and all conflicts in the testimony presented. *See Sheffield*, 676 S.W.2d at 547. The jury did so in this case. On appeal, our review is limited to whether the evidence is sufficient to sustain the Defendant's convictions, and, as stated above, we have determined that the evidence is, in fact, sufficient to sustain the Defendant's convictions. The Defendant is not entitled to relief on this issue.

## D.  Sentencing

The Defendant contends that the trial court imposed upon him an "excessive prison sentence." He asserts that he is eligible for Community Corrections pursuant to Tennessee Code Annotated section 40-36-106 and that, while he has an extensive criminal history, he is not a violent offender and his crimes all stem from his drug addiction. He states that, therefore, the trial court should have ordered him to serve his sentence on Community Corrections. The State counters that the trial court properly sentenced the Defendant to a term within his sentencing range and that the record supports the trial court's denial of Community Corrections. Because the Defendant confines his argument to the issue of whether the trial court erred when it denied him Community Corrections, we will limit our review to that issue. *See* Tenn. R. App. P. 10(b).

When sentencing the Defendant, the trial court found that two enhancement factors applied: factor (1) that the Defendant had a previous history of criminal convictions in addition to those necessary to establish his range based upon the Defendant's fifteen prior felony convictions, and factor (7) that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community, based upon the Defendant's arrest and new charges for selling counterfeit drugs while he was on bond in this case. T.C.A. § 40-35-114(1), (7). The trial court sentenced the Defendant to: ten years, as a Range III Persistent Offender, for the sale of less than 0.5 grams of cocaine (a Class C felony); eighteen years, as a Range II Multiple Offender, for the possession with intent to sell 0.5 grams or more of cocaine (a Class B felony); three years, as a Career Offender, for promoting prostitution; and eleven months and twenty-nine days, to be served at 70%, for his two misdemeanor convictions, possession of marijuana and evading arrest. The trial court denied the Defendant an alternative sentence, stating:

> By statute, the [D]efendant is eligible for probation as to four of the
> counts, but is not eligible for probation as to Count Two in which his
> sentencing range is between twelve and twenty years. He is seeking

alternative sentencing as to each count under the provisions of this statute and case law, the Court is of the opinion that the [D]efendant is not amenable to treatment and/or rehabilitation based upon his prior attempts and failures at release into the community, including his new narcotic related arrest while on bond and his failure to be candid with the Court as to the details of that offense. The [D]efendant continued to deny details of his new arrests involving this drug sale which were observed by Detective Deslauriers. Although the [D]efendant admits to problems with drugs and his prior convictions corroborate his interactions with controlled substances, the Court does not find the [D]efendant would be amenable to treatment or rehabilitation. T.C.A. § 40-35-103.

. . . .

The court must consider the lack or potential for rehabilitation in determining the sentence length or how the sentence is to be served. T.C.A. § 40-35-103. In this case, the Court places great weight on the [D]efendant's prior convictions and his behavior while on bond in this case. The Court finds the [D]efendant's lack of acknowledgment for his actions further demonstrate his potential to commit additional crimes. Specifically, the Court accredits the testimony of Detective Deslauriers as to the new arrest and finds the [D]efendant has not been candid with this Court as to his intent to sell the substance.

Based upon these findings, the trial court ordered that the Defendant serve his sentence in confinement.

When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). This presumption, however, is conditioned upon the affirmative showing in the record that the trial court properly sentenced the defendant. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to this section note, the burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. If the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result was preferred. T.C.A. § 40-35-103 (2006), *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the

determinations made by the trial court that are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In conducting a de novo review of a sentence, we must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The Criminal Sentencing Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2) and (d) (2006); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008).

Due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* (footnote omitted). T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6) (emphasis added).

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-(C) (2009). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S .W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

The Tennessee Community Corrections Act was developed to "punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." T.C.A. § 40-36-103(1). The program is available for:

(1) [p]ersons who, without this option, would be incarcerated in a correctional institution;

(2) [p]ersons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person . . .;

(3) [p]ersons who are convicted of nonviolent felony offenses;

(4) [p]ersons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(5) [p]ersons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

(6) [p]ersons who do not demonstrate a pattern of committing violent offenses . . . .

T.C.A. § 40-36-106(a)(1)-(6). Those who are sentenced to incarceration or are on escape at the time of sentencing are not eligible for the program. T.C.A. § 40-36-106(6).

Felony offenders who are not otherwise eligible for the program "and who would be

usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution," may be considered for eligible punishment in the community under the "special needs" provisions of the Community Corrections Act. T.C.A. § 40-36-106(c). In order to be sentenced pursuant to the "special needs" exception, however, the offender must first demonstrate that he or she is eligible for probation. *Grigsby*, 957 S.W.2d at 546. The appellant bears the burden of demonstrating a "special need." *Id.* at 547 n.11. If a defendant seeks probation, then that defendant bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2006). An offender is eligible for probation if he is sentenced to ten years or less and has not been convicted of one of several offenses for which probation is prohibited. T.C.A. § 40-35-303(A) (2006). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2006), Sentencing Comm'n Cmts.

The Defendant makes no argument that the length of his sentence was excessive; rather he contends that he should have been sentenced to community corrections rather than prison. He relies upon Tennessee Code Annotated section 40-35-102(3)(C) for the proposition that his sentence should encourage "effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants."

We first note that, as discussed above, the trial court sentenced the Defendant in this case to eighteen years for his Class B felony conviction of possession with intent to sell 0.5 grams or more of cocaine. The Defendant is not eligible for probation for that sentence. *See* T.C.A. § 40-35-303(A). Further, because eligibility for probation is a prerequisite for sentencing under the "special needs" provision of the Community Corrections Act, the Defendant is likewise ineligible for "special needs" sentencing. As such, we conclude the trial court properly rejected all forms of alternative release when sentencing the Defendant for this conviction.

The Defendant was ordered to serve this sentence at 35%, meaning that he will serve 10.8 years of his sentence before he is eligible for parole. He will be eligible for parole for his other convictions, the sale of less than 0.5 grams of cocaine and promoting prostitution, after 4.5 and 3.6 years, respectively. Because the trial court ordered his sentences to run concurrently, the trial court's proper denial of Community Corrections for the eighteen-year sentence makes moot whether the trial court properly denied Community Corrections for the other convictions.

In the event of further review, however, we conclude that the Defendant's poor potential for rehabilitation, based upon his arrest while on bond in this case, and his lack of candor support the trial court's denial of a Community Corrections sentence. *See* T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994); *see also State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999). The Defendant is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and the applicable law, we conclude that the evidence is sufficient to sustain the Defendant's convictions and that the trial court properly sentenced him. As such, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE